Peter A. HESS, Plaintiff,

v.

Harry GRAY, Edward L. Hennessy, Jr.,
and United Technologies Corporation,
Defendants.

No. 79 C 2023.

United States District Court,
N. D. Illinois, E. D.

Nov. 14, 1979.

Robert D. Allison of Prins; Flamm & Susman, Ltd., Chicago, Ill., on the brief, for plaintiff.

Fred H. Bartlit, Jr., David E. Springer, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This securities action has been brought by the plaintiff Peter A. Hess against defendant United Technologies Corporation ("United"), a Delaware corporation with its principal place of business in Hartford, Con-

necticut, and two of United's officers, defendant Harry J. Gray ("Gray"), Chairman, Chief Executive Officer, President and Member of the Board of Directors, and Edward L. Hennessy ("Hennessy"), Executive Vice-President, Chief Financial Officer, and Member of the Board of Directors. Hess is seeking damages from the defendants on behalf of himself and all other stockholders similarly situated. Jurisdiction arises under the Securities Exchange Act of 1934, 15 U.S.C. § 78aa and principles of pendent jurisdiction.

In November of 1978, United made a tender offer for up to 17,000,000 shares of Carrier Corporation ("Carrier") common stock at $28 per share.[1] Upon receipt of this offer, plaintiff promptly tendered his 3,000 shares of Carrier common stock. However, only 2,553 were purchased by United, and the remaining 447 shares were returned to the plaintiff. During the period of the offer, extending from November 7 to early December of 1978, several Carrier stockholders "double-tendered" their shares to United.[2] When more than 17,000,000 shares were tendered, United stated that it would take, pursuant to the terms of the tender offer, approximately 85.07 percent of that stock on a pro rata basis. The complaint alleges that this plan was carried out in spite of the fact that United allegedly knew that some of these shares had been double-tendered.

It is further alleged in the complaint that United purchased only 16,250,000 shares on a pro rata basis due to incorrect calculations. In order to gain control of the company and meet the terms of the tender offer, United had to purchase an additional 750,000 shares. In doing so, United allegedly failed to accord both the plaintiff individually and the plaintiff class as a whole the opportunity to resubmit to United the shares that had been returned on the pro rata plan. Instead, the remaining shares were purchased directly from institutional sellers and on the open market at prices below the $28 offer price. As a consequence of these transactions, plaintiff contends that not only did United accept a lower percentage of the tendered shares than it had stated would be accepted, but also that the institutional sellers were able to sell a higher percentage of their tendered shares for themselves or their customers, both being directly contrary to the terms and conditions of the original offer.

Based on this series of transactions, the plaintiff alleges that the defendants violated §§ 10(b), 13(d), 14(d)(6) and 14(e) of the 1934 Act and Rules 10b–4, 10b–5 and 10b–13, thereby causing damages to be sustained by the plaintiffs, shareholders of Carrier.

In July of 1979, the defendants filed a motion requesting a transfer of venue to the Southern District of New York. Plaintiff opposed this motion and in response filed a motion to amend the complaint and to add two new defendants, Connecticut General Life Insurance Company ("Connecticut General") and Continental Illinois National Bank and Trust Company ("Continental"). If Continental is joined as a defendant, this would preclude a transfer of this cause of action to New York. The venue provision of the National Bank Act, 12 U.S.C. § 94, allows civil actions against national banks to be brought only in the

---

1. The offer to purchase the common stock of Carrier Corporation provided:

 1. Number of Shares. Upon the terms and subject to the conditions set forth in the Offer, the Purchaser will purchase up to a maximum of 17,000,000 shares of Common Stock. . . .
 If more than 17,000,000 shares of Common Stock . . . are properly tendered and not withdrawn prior to 10:00 A.M., New York City Time, on December 4, 1978, purchases will be made on a pro rata basis. . .

 If fewer than 17,000,000 shares of Common Stock . . . are properly tendered and not withdrawn prior to 10:00 A.M., New York City Time, on December 4, 1978, all such shares will be accepted for purchase.

2. Double-tendering involves tendering more shares than are owned by the stockholder. In this instance, the double-tendering occurred by shareholders delivering both shares and Protects (guarantees of delivery) for the same shares.

district where it is established,[3] in this case the Northern District of Illinois.

The issues before the Court are (1) whether the complaint can be amended to add two new defendants and (2) whether all or part of this action should be transferred to the Southern District of New York.

## AMENDING THE COMPLAINT

■ Normally, Rule 15(a), Fed.R.Civ.P. allows an amendment to the complaint to be made as a matter of course any time before a responsive pleading is served:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served.

The plaintiff failed to amend his complaint before the defendants filed their answer on July 24, 1979. The motion to amend was filed some eight days later on August 1.

■ Although the plaintiff can no longer amend as a matter of right, Rule 15(a) does provide for liberal amendment after responsive pleadings have been filed:

> . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

This rule has been interpreted and applied by federal courts in a liberal fashion absent some justification for refusal. "The central inquiry in each case is whether an amendment would result in undue prejudice to the defendant." *Alberto-Culver Company v. The Gillette Company*, 408 F.Supp. 1160, 1161 (N.D.Ill.1976). *See also Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), 3 Moore's Federal Practice ¶ 15.08(2),

and *United States v. Hougham*, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

■ Generally, almost every amendment to a complaint results in some prejudice to the defendant, either in the form of additional counts or new discovery resulting in delay. The test in each case is whether undue prejudice will result. As the court in *Alberto-Culver, supra*, stated, the trial court, in exercising its discretion, must balance the general policy behind Rule 15 (that controversies should be decided on the merits) against the prejudice that might result from amendment. A motion to amend should be denied only in those instances where the prejudice outweighs the right to have the case tried on the merits.

■ The defendants argue that undue prejudice will result from this amendment should it be allowed because the joinder of Continental will prevent a change of venue to the Southern District of New York. The Court disagrees in that even though Continental may be added, Rule 21, Fed.R.Civ.P. provides for severance, thus a transfer with respect to a severed party is possible if the requirements of 28 U.S.C. § 1404(a) are met. Rule 21 provides in part: "Any claim against a party may be severed and proceeded with separately." Therefore, even though the amendment would prevent transfer of the cause of action as against Continental, there is no undue prejudice with respect to United because of the provision in Rule 21 for severance.

## A. Activities of Continental and Connecticut General

Plaintiff has moved to amend the complaint and add two new defendants, Connecticut General and Continental, either as indispensable parties under Rule 19, Fed.R. Civ.P. or under permissive joinder pursuant

---

**3.** The specific venue provision of the National Bank Act, 12 U.S.C. § 94, are to prevail over the broader, more generally applicable provisions of the Securities Exchange Act. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 158, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). The relevant portion of the act reads:

> Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

to Rule 20, Fed.R.Civ.P. Plaintiff states that the information on the proposed defendants became known only after the defendant had filed the affidavit of David Springer in support of the motion to transfer venue. On the basis of the affidavit, the plaintiff alleges that Connecticut General and Continental are proper parties because the double-tendering which forms the basis for this suit arose from 'errors' made by the two new defendants. The actual conduct involved allegedly constitutes negligence in that both institutions tendered a total of 500,000 shares by transmitting their shares with letters of transmittal while at the same time sending guarantees of future delivery of the same stock certificates.

The result of these errors has been characterized as the primary cause of the admitted discrepancy between the percentage of shares promised to be purchased pursuant to the tender offer and the actual number of shares purchased. Springer Affidavit, ¶ 12. In addition, the plaintiff also charges that not only did the acts of the two new defendants amount to tortious interference with the contract relations between the plaintiff and United but also that both institutions aided and abetted United in a scheme to cover up these allegedly negligent acts.

## B. Joinder as Indispensable Parties

In his motion to amend, plaintiff contends that 19(a), Fed.R.Civ.P. requires joinder of these two additional defendants:

(a) Persons to be Joined if Feasible. A person who is subject to service to and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties . . . .

The argument set forth by the plaintiff is that it "is clear from the Springer affidavit that the present defendants intend to attribute blame for their admitted violations of the tender offer terms on both institutions. Thus, this presents an instance where Rule 19(a)(1) joinder is necessary to accord complete relief to the plaintiff class." Plaintiff's Motion For Leave To File An Amended Complaint Instanter, Add Two Parties as Defendants and Cause Summons to Issue, ¶ 6. In the proposed amended complaint, the plaintiff requests judgment against the defendants, jointly and severally, for all damages. The issue is whether joint tortfeasors are considered indispensable parties for purposes of Rule 19(a)(1).

In order to establish a claim of indispensibility, a defendant must at least produce evidentiary materials from which the court can make the findings of fact upon which the claim is based. *Dunlop v. Beloit College*, 411 F.Supp. 398 (W.D.Wis. 1976). All that the plaintiff has shown in this instance is that the defendants are joint tortfeasors, and it

is generally understood that the liability of joint tort-feasors is both joint and several, so that while the joinder of joint tort-feasors is permissible, it is not compulsory.

*Id.* at 402. Furthermore, 19(a)(1) refers to relief as between those already parties, not between an existing and an absent party. *McDonald v. General Mills, Inc.*, 387 F.Supp. 24 (E.D.Cal.1974). In this case, United has billions of dollars of assets, more than sufficient to satisfy any money judgment that might be awarded to the plaintiff. Memorandum in Opposition to Plaintiff's Motion For Leave to File an Amended Complaint, p. 9. Based on the facts that the defendants are jointly and severally liable as joint tortfeasors and that the assets of United are sufficient to satisfy complete relief for the plaintiff absent the proposed additional defendants, Connecticut General and Continental are not indispensable parties under Rule 19(a)(1) for purposes of this suit.

## C. Permissive Joinder

Alternatively, the plaintiff argues that the proposed defendants should be added under Rule 20, Fed.R.Civ.P.:

(a) Permissive Joinder. . . . All persons (and any vessel, cargo or other property subject to admiralty process in

rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

In federal practice, this type of permissive joinder and alternative pleading is liberally construed. *Block Industries v. DHJ Industries, Inc.,* 495 F.2d 256 (8th Cir. 1974). Even though Continental and Connecticut General are not necessary parties, the plaintiff has made a sufficient showing to permit permissive joinder under Rule 20. All the defendants are alleged to have participated in the double-tendering either as buyers or sellers of Carrier stock. Since joint tortfeasors are generally liable both severally and jointly, permissive joinder will be permitted in this instance. *Dunlop v. Beloit College,* 411 F.Supp. 398 (W.D.Wis.1976).

The plaintiff's motion to amend the complaint and add Connecticut General and Continental as defendants is granted.

## TRANSFER OF VENUE

Defendants United, Gray, and Hennessy have filed a motion requesting a transfer of venue under 28 U.S.C. § 1404(a) to the Southern District of New York. The addition of Continental as a new defendant precludes such a transfer due to the specific venue provisions of the National Bank Act, 12 U.S.C. § 94. Under that act, venue with respect to Continental is proper only in the Northern District of Illinois. This Court does recognize that the interests of United will be prejudiced by the addition of Continental, since this would seem to moot the question of transfer. Moreover, the Court is aware that other courts

> have authorized severance and transfer of claims as to less than all defendants in a multi-defendant suit upon a determination that the defendant as to whom venue is improper in the transferee district is only peripherally involved in the litigation. . . . Were the rule otherwise,

a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing.

*Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970, 972 (N.D.Ill.1973).

The issues before the Court are (1) whether the defendants in this case can be severed, and if so, (2) whether the causes of action against United, Gray and Hennessy should be transferred to New York.

### A. Severance of Parties

Rule 21, Fed.R.Civ.P. provides that "Any claim against a party may be severed and proceeded with separately." Severance is authorized under this Rule even if there is no improper joinder if there are other sufficient reasons. If certain claims are properly severed, the result is that there are two or more separate actions, any of which may be transferred while retaining jurisdiction over the others. *Wyndham Associates v. Bintliff,* 398 F.2d 614 (2d Cir. 1968).

Severance of claims against one or more defendants in order to permit the transfer of the action against the remaining defendants is permitted when the administration of justice would be materially advanced. This is especially so where the defendants as to whom venue would be improper in the proposed transferee district are alleged to be only peripherally involved in the conduct forming the basis of the suit. *Wyndham, supra,* at 618. *See* 3A Moore's Federal P. ¶ 21.05. The key element for a court's consideration is the degree of each defendant's involvement in the transactions alleged, for severance will be allowed only when the severed but not transferred defendant was only secondarily or peripherally involved in the litigation. *Mobile Oil Corp. v. W. R. Grace & Co.,* 334 F.Supp. 117 (S.D.Tex.1971).

Severance has been allowed where the severed but remaining defendant in a pat-

ent infringement case merely purchased and resold tubes and thus was deemed not to be a primary party. *Burroughs Corporation v. Newark Electronics Corporation*, 317 F.Supp. 191 (N.D.Ill.1970). In a factual situation similar to this case, one defendant engaged in a scheme to manipulate the market price of stock and the others aided and abetted by false statements and actual stock transactions. The court permitted severance and transfer of the primary defendant to Texas where numerous proceedings involving manipulation of the same stock were pending. *Wyndham, supra.*

Neither Continental nor Connecticut General are primary parties for the purposes of this litigation. The complaint alleged improper conduct on the part of United in carrying out the provisions of the tender offer. In this respect, the plaintiff can recover any damages inflicted by the improper tender offer from United itself. The roles of Continental and Connecticut General in the double-tendering were not known to the plaintiff until well after the original complaint was filed. Although these two institutional defendants were allegedly negligent in their handling of the shares they offered to United, the actual damages allegedly resulted from United's conduct in ignoring the pro-rata provision and their subsequent purchases on the open market.

■■■ A second element to be considered is whether the absence of secondarily involved defendants from the transferee forum would work an unwarranted inconvenience upon the transferee court or the parties in that forum. As the court in *Mobil Oil* stated:

Severance would be inappropriate if it would merely lead to piecemeal litigation in separate forums. Impermissible inconvenience, however, does not exist in a case in which the adjudication of the claims leveled against a severed and transferred defendant would include the adjudication of the issues which form the basis of the charges made against the non-transferred defendant. This is especially true where both defendants have potential joint liability, and the transferred defendant can be expected to be able to bear the burden of satisfying a judgment rendered in the transferee forum. In a case where these factors exist it is reasonable to believe that the plaintiff would not have to undergo the inconvenience and expense of prosecuting two cases in different forums to achieve the relief which he originally sought in the transferor forum. This is the inconvenience which courts must guard against. In essence, the severance and transfer of the claims against a primary defendant is appropriate when it is apparent that the plaintiff will be able to obtain the substance of the relief he seeks in the transferor forum.

*Mobil Oil, supra*, at 122–123.

■■■ Here there is no need for the plaintiff to be inconvenienced by separate lawsuits. All the defendants have been named as joint tortfeasors, thus a judgment against any of them would permit full recovery. Therefore, this Court finds that severance is available and appropriate in this case if the requirements for a transfer of venue are met.

### B. 1404(a) Requirements for Transfer of Venue

■■■ United has filed a motion pursuant to 28 U.S.C. § 1404(a) seeking a transfer of venue from this district to the Southern District of New York. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under this provision, courts now have even broader discretion than they had before under the doctrine of *forum non conveniens. Glenn v. Trans World Airlines, Inc.*, 210 F.Supp. 31 (E.D.N.Y.1962). The purpose of § 1404(a) is to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against inconvenience and expense. *Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

 United has the burden of proving that the suit should be transferred, and must do so by establishing that the balance weighs strongly in favor of the proposed transferee district. *Wm. A. Smith Contracting Co. v. Travelers Indemnity Co.*, 467 F.2d 662 (10th Cir. 1972). Although the plaintiff's choice of forum will rarely be disturbed, this choice is entitled to less consideration where the plaintiff is not a resident of the judicial district in which the suit is brought, or where there is no significant contact by the forum state with the transactions or conduct underlying the cause of action. *See Glenn, supra*, 210 F.Supp. at 33, and *Pope v. Missouri Pacific Railroad Company*, 446 F.Supp. 447 (W.D.Okl.1978).

In order to meet the requirements of § 1404(a), the movant must establish (1) that venue is proper in the transferor district; (2) that the transferor court has the power to transfer the case (that is, that the transferee court is in a district "where it might have been brought"); and (3) that the transfer is for the "convenience of parties and witnesses, in the interest of justice."

There is no indication that venue is improper in the Northern District of Illinois. Jurisdiction is brought under the Securities Exchange Act of 1934 whose venue provision provides for suit in any "district wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or in an inhabitant or transacts business . . ." Venue is also proper in the proposed transferee district of the Southern District of New York because United transacts business there. Springer Affidavit, ¶ 20.

### (1) Convenience of the Parties

 The plaintiff's choice of forum is to be given substantial weight in determining whether to transfer and will rarely be disturbed, especially where the plaintiff is a resident of the judicial district in which the suit is brought, as is the case here. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Court recognizes at the same time that in cases involving numerous defendants from different states, it is inevitable that some party will be inconvenienced no matter where the suit is tried. The weighing of the relative inconvenience and the determination of which forum the balance of convenience favors is a matter committed to the discretion of the district court.

*Wyndham, supra*, at 620–621.

The only defendant who resides in the Northern District of Illinois is Continental, who has already been found not to be an indispensable or primary party in this action. The remaining defendants reside in Connecticut and New York, and a key participant is from New Jersey (First Jersey).

 Plaintiff argues that the cost of litigating in a foreign district should be a factor in weighing the parties' respective positions. *Butterick Co. v. Will*, 316 F.2d 111 (7th Cir. 1963). According to the plaintiff's briefs, United not only has a fleet of jets that could be used to transport the defendants and witnesses to Chicago but has unlimited financial means compared to small shareholders like the plaintiff in this action. However, this factor must be balanced against United's argument that this is the type of suit in which the plaintiff would not be likely to testify because of lack of personal knowledge. In addition, United, Gray and Hennessy would be faced with the possibility of having to testify at a trial in New York and a trial in Illinois. Nevertheless, the Court cannot conclude that transfer is warranted solely on the grounds of the convenience of the parties.

### (2) Convenience of the Witnesses

The plaintiff intends to call at trial witnesses from both Connecticut General and Continental, the latter being residents of Illinois, the former of Connecticut. If the case against United, Gray and Hennessy is transferred to New York, witnesses from Continental will be inconvenienced and out of the scope of the subpoena power of the Southern District of New York. On the other hand, if the case is heard here, witnesses from Connecticut General would

have to travel to Illinois to testify, if indeed they would at all since they would be beyond this Court's compulsory process. In addition, the plaintiff also intends to call customers whose shares were wrongfully double-tendered by Continental, all of whom reside in Illinois.

Balanced against this must be the convenience of the witnesses the defendants intend to call. United will try to compel the attendance of employees and officers of Lazard Freres & Co., the dealer-manager of the carrier tender offer. Lazard's officers are in New York, thus their witnesses would be forced to travel to Illinois should they decide to testify voluntarily. The same is true for those United employees who are not parties to this action but are expected to testify as well as for witnesses from Georgeson & Co., the information agent for the tender offer, and Citibank, N. A., the forwarding agent.

■ An additional factor to be considered in balancing the convenience of witnesses is the availability of compulsory process to insure the attendance at trial of unwilling or hostile witnesses. The plaintiff has indicated he expects to call witnesses from Continental and its customers in order to establish Continental's negligence and to determine if United acted in good faith. If this case against United is severed and transferred, Continental would remain in Illinois and thus compulsory process would be available with respect to witnesses testifying as to Continental's negligence. The plaintiff has not indicated that his potential witnesses would be unwilling to testify in New York or that compulsory process would be necessary.

On the other hand, United plans to call employees of First Jersey, the depository agent responsible for tallying and verifying the tendered shares. Since United believes that First Jersey may be responsible for any damages incurred as a unit of First Jersey's errors, these witnesses are regarded by United as hostile and thus their attendance at trial will have to be compelled by subpoena. In addition, since these witnesses are located in Jersey City, New Jersey, testifying in New York would minimize the inconvenience of testifying in Illinois.

■ Plaintiff has argued that even though most of the witnesses are outside of Illinois' subpoena power, this is generally solved by the evidentiary use of deposition. Although this solution may be necessary under certain circumstances, live testimony is preferred whenever feasible. The majority of the witnesses would either be unwilling, inconvenienced, or not subject to compulsory process if the cause of action against United is tried in Illinois. The Supreme Court's opinion in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839, 844, 91 L.Ed. 1055 (1947) indicates a strong preference for live testimony:

> Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.

■ On balance, the Court finds that the convenience of the witnesses would best be served by the transfer of the cause of action against United, Gray and Hennessy to the Southern District of New York.

### (3) Interests of Justice

■ Many different factors have been considered in various decisions deciding a change of venue motion.[4] With re-

---

4. The Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) listed certain factors which were relevant to a forum non conveniens motion:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

the action; and all other pertinent problems that make trial of a case easy, expeditious, and inexpensive.

These factors have since been applied to 1404(a) actions and expanded to include the following (1) the plaintiff's choice of forum, (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses, (3) the cost of making the necessary proof,

spect to this litigation, there are three major factors which strongly indicate that in the interests of justice and judicial economy the cause of action against United, Gray and Hennessy should be transferred to New York. First, New York is the place where the alleged acts of United took place, where most of the relevant documents are stored, and where most of the witnesses reside; second, a comparison of the dockets indicate that trial may be held at an earlier date if transferred; and third, there are already two pending class actions in the Southern District involving the same issues and where United is a named defendant.

There is evidence that many of the acts and practices alleged in the complaint occurred in the Southern District of New York. David Springer, in his affidavit in support of the motion to transfer, states that "the Tender offer documents, which are the subject of this lawsuit, were prepared in the Southern District of New York; meetings between representatives of United and First Jersey were held in the Southern District of New York; and United's purchases of Carrier stock occurred in the Southern District of New York." Springer Aff. ¶ 20(b). Moreover, not only are most of the witnesses located within or in close proximity to the Southern District as has already been indicated, but many if not most of the documentary sources of proof are in the same vicinity. Springer Aff. ¶ 43. In addition, the Southern District of New York does have compulsory process over most of the prospective witnesses in this case.

The degree to which the dockets of this district court are congested is also a factor to be considered. A review of the data for the year ending June 30, 1979, indicates that this cause would go to trial sooner in New York than Illinois. During this period, the Southern District of New York had 7,976 civil cases whereas the Northern District of Illinois had 4,909. However, the time from the issue of the suit to trial averaged 18 months in Illinois, but only 14 months in New York. There is good reason to believe that this case, if sent to New York and consolidated, would get to trial at an earlier date than if it remained here.

The final factor calling for transfer involves the existence of two other class actions presently pending in the Southern District involving United as a defendant and containing substantially the same allegations as made by the plaintiff in this litigation.[5] In *Continental Grain Company v. The FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Supreme Court upheld a change of venue involving two suits arising out of the same accident but filed in different judicial districts. The district court in New Orleans had found that the requirements of § 1404(a) had been met:

> [T]he cause of the casualty is precisely the issue in the case at bar. The conve-

(4) question as to the enforceability of judgment if one is obtained, (5) difficulties that may arise from congested dockets, (6) the possibility of the existence of questions arising in the area of conflict of laws, (7) the advantage of having a local court determine questions of local law, and (8) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *See Texas Gulf Sulpher Co. v. Ritter*, 371 F.2d 145 (10th Cir. 1967), *Pope v. Missouri Pacific Railroad Company*, 446 F.Supp. 447 (W.D.Okl.1978).

5. On June 8, 1979, *Ehud Hubner v. United Technologies Corporation*, was filed in New York, raising identical issues and seeking to represent the same class of plaintiffs. On July 13, 1979, another identical suit was filed in New York, *Herd v. United Technologies Corporation* (No. 79 Civ. 3642). In addition, there is a third related civil action pending in the Southern District of New York and, although the issues are somewhat different, the basic transaction sued upon (the tender offer by United) is the same and discovery will probably overlap. Finally, the Securities and Exchange Commission filed a civil enforcement action in the United States District Court for the District of Columbia, raising issues which are substantially similar to those in this action. The SEC suit has also been transferred to the Southern District of New York by a D. C. Court who initially refused to transfer but later reversed itself in ruling on a motion to reconsider. At this time all the suits involving the tender offer except for this one are presently pending in the Southern District of New York. Springer Affidavit ¶ 47, 48 and Springer Supplemental Aff. ¶ 2.

nience of the great majority of witnesses in this case dictates that this case be tried in Memphis. The efficient administration of justice requires that this claim for cargo damage be tried by the same court which is trying the claim for bulk damages, both claims being between the same parties, and relate to the same incident.

*Id.* at 21, 80 S.Ct. at 1472. The Supreme Court agreed, stating that the case,

> if tried in New Orleans, will bring about exactly the kind of mischievious consequences against the interest of justice that § 1404(a) was designed to prevent, that is, unnecessary inconvenience and expense to parties, witnesses, and the public. . . . To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

*Id.* at 22, 26, 80 S.Ct. at 1472–74.

The same reasoning applies with equal force to this case. There are presently pending in New York three civil cases arising out of the same transaction and involving identical issues and a fourth which is closely related. Transfer of the cause of action against United, Gray and Hennessy to the Southern District of New York would serve both the interest of justice and judicial economy.

■ Therefore, it is ordered that the claims against defendant United, Gray and Hennessy be severed and, pursuant to § 1404(a), transferred to the Southern District of New York.

## STAY OF PROCEEDINGS

■ The plaintiff has argued that the transfer to New York would work a hardship in that he must now prosecute two suits in two different locations. The Court acknowledges this possibility but at the same time recognizes that a

trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. . . . In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar . . . .

*Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979). The power to order a stay is incidental to the power inherent in every court to control the docket of cases before it in the interest of time and economy for parties, counsel, and the court itself. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

■ To order a stay of proceedings, it must be clear that the interests of justice require it, that adjudication of the claim would be a waste of judicial effort and that the plaintiff will not be substantially harmed by the delay. *Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F.Supp. 117 (S.D.Tex. 1971). Initially, it is clear that the severed claim will most likely be disposed of in less time in New York than if it remained in the Northern District of Illinois. In this sense, the plaintiff will not be harmed or prejudiced by delay in his action against United.

■ Furthermore, since all the defendants including United are jointly and severally liable, the case against Continental and Connecticut General would be dismissed should the plaintiff prevail against United. On the other hand, if United prevails in the New York suit, the plaintiff's suit against the two severed defendants in the Northern District of Illinois remains. Under these circumstances, no significant prejudice to the plaintiff will result if the proceedings against Continental and Connecticut General are stayed. Moreover, to permit the proceedings to proceed here while the principal parties are resolving the issue in New York would be a waste of time and expense of both the court, the litigants, and counsel.

The severed cause of action against the new defendants Continental and Connecticut General is stayed pending the outcome

of the class action presently pending in the Southern District of New York.

## CONCLUSION

On November 2, 1979, the plaintiff appeared before this Court and presented a written motion to stay the Court's consideration of the motions to file an amended complaint and transfer venue. In support of this motion, plaintiff filed a stipulation of the parties agreeing to a stay pending the outcome of discovery in the related cases in New York.[6]

■ However, consistent with the view of the Court that, in the interest of justice and judicial economy, the transfer to New York should be made as expeditiously as possible so that any pretrial motions or settlement negotiations in these class actions may be facilitated without undue delay, the motion for a stay of consideration of the motions to transfer venue and amend the complaint is denied.

The Court finds that, in the interest of justice and for the convenience of the parties, the plaintiffs' motion to amend the complaint and add two new defendants is granted, the cause of action against defendant United, Gray and Hennessy is severed and transferred to the Southern District of New York for all purposes, and the remaining action against the new defendant Continental and Connecticut General is stayed pending resolution of the New York litigation. The remaining action is placed on this Court's status calendar for June 13, 1980, at 10:30 A.M. It is so ordered.

---

6. At the hearing on the motion, Mr. David Springer, counsel for defendants Gray, Hennessy and United stated the reason for the stipulation was that settlement negotiations were being conducted in New York and, if successful would settle this action as well. At the same time, however, Mr. Springer did emphasize his position that the case should be transferred to New York in order to facilitate further negotiations should the motion for a stay be denied. In addition, Mr. Arthur Susman, representing the plaintiff, indicated that his reasons for agreeing to the stipulation was his concern about the existence of further evidence concerning Continental.